BANES STEAMSHIP COMPANY *vs.* AMERICAN IMPORTING AND TRANSPORTATION COMPANY.

Suffolk. March 29, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract,* Construction, Performance and breach. *Ship. Charter Party.*

In an action upon a charter party for the hire of a steamship for the last month of a term of hiring of seven months, it appeared that the defendant had paid for each of the six previous months and had refused to pay for the seventh month on the ground that the vessel was unseaworthy and that this gave him the right to cancel the charter party. The charter party provided that the steamship should be "tight, staunch, strong and in every way fitted for the service" when delivered to the defendant, and that the plaintiff should "maintain her in a thoroughly efficient state in hull and machinery for and during the services." It also provided that the defendant should not be liable for the vessel's hire during the time required for repairs. It was admitted that the vessel was tight, staunch, strong and in every way fitted for the service when delivered to the defendant. In the month before the last month of the term of the charter party the plaintiff ordered the vessel to sail on a certain day. Her master could not do so because repairs were required.

The defendant thereupon notified the plaintiff that he surrendered the vessel and demanded a return of the charter. The plaintiff declined to accept the surrender. The judge, before whom the case was tried without a jury, found that the vessel when ordered by the plaintiff to sail at the time in question was unseaworthy, but that this was due to the fact that certain repairs were needed, which were completed in a reasonable time, namely, three days later, and that the vessel then was in a seaworthy condition and continued to be so until the expiration of the term of the charter party. The judge also found that " the plaintiff maintained the . . . vessel in a condition fit for the service for which it was chartered during the whole time of the charter party, except during certain periods when necessary repairs were being made." The findings of the judge were warranted by the evidence. *Held*, that there was no breach by the plaintiff of his agreement nor any failure to perform his part of the contract, and that the defendant had no right to cancel the charter party and in accordance with its terms was liable to pay for the vessel during the last month.

MORTON, J.  This is an action to recover for one month's and one day and two hours' hire of the steamship Banes pursuant to a charter party entered into between the owners and the defendant. There is no controversy as to the one day and two hours. The dispute relates to the hire for the month beginning September 17 and ending October 17, 1909. The case was tried before a judge of the Superior Court* without a jury, and was heard partly on agreed facts and partly on oral and written evidence. The judge found for the plaintiff, and the case is here on exceptions by the defendant to the refusal of the presiding judge to give certain rulings that were requested.

The charter party was dated February 27, 1909, and by it the defendant hired the steamship for seven months beginning from the time of delivery between March 15 and 31, and agreed to pay $2,600 per calendar month, in advance monthly from the date of delivery. The vessel was delivered on March 17, and the defendant paid in advance as agreed for the calendar months beginning March 17, April 17, May 17, June 17 and July 17, respectively. On August 16 the defendant sent the plaintiff a check for $2,047.09, being the amount due for the calendar month beginning August 17, less certain deductions for the time when it was alleged the vessel was "off hire" during the month of July. The letter enclosing the check concluded as follows: " From the best information obtainable it is very doubtful whether the S. S. Banes can complete her charter in a reasonably satisfactory

manner, and we have every reason to fear that she is far from seaworthy." The vessel arrived at Philadelphia on or about August 13, where she was detained several days. The defendant ordered the vessel to sail on August 16, but the captain could not do so because of repairs that were required. On August 19 the plaintiff notified the defendant, through the brokers who had chartered the ship for them, of the detention, adding that they could not " say when [the] ship will be ready for sea." Thereupon the defendant telegraphed, " Hereby surrender Banes being utterly unseaworthy, demand return of charter and coal money." The plaintiff declined to accept the surrender. Some correspondence followed between the parties, and on August 21 the plaintiff notified the defendant that the repairs had been completed and that the captain awaited their orders. Still further correspondence followed, when on August 28 the defendant telegraphed the plaintiff ordering the vessel to sail for Port Maria in Jamaica, to which place the ship sailed, arriving on September 4. On arrival the captain reported to the defendant's agent. The vessel lay there till September 29, when pursuant to the request and by the authority of the defendant, pending efforts at an adjustment, the ship was chartered by the plaintiff to other parties for a trip to Baltimore, and on its arrival at that port lay there without any further orders from the defendant till the expiration of the charter party. The defendant did not pay and never has paid the hire alleged to be due for the calendar month beginning September 17.

The defendant contends that the plaintiff was bound to have the vessel fit for the service it was to perform under the charter party during the whole time covered by the charter party and at each stage of every voyage that it should make in such service. In other words, it contends that there was a warranty of seaworthiness which applied during the whole time covered by the charter party and that inasmuch as the vessel was not in a condition to go to sea when ordered to do so by the defendant on August 16, the warranty was broken and the defendant had a right to cancel the charter party.

It may well be doubted whether the attempted cancellation was not waived by ordering the vessel to sail on August 28, and by the subsequent authority given to the plaintiff to charter her

to another party for a trip to Baltimore. But, however that may be, the agreement of the plaintiff was not that the vessel should be seaworthy at all times during the period covered by the charter party, but that she should be "tight, staunch, strong and in every way fitted for the service" when delivered to the defendant in Baltimore, and that the plaintiff should "maintain her in a thoroughly efficient state in hull and machinery for and during the services;" and the charter party expressly contemplated that the vessel might have to be withdrawn at times for repairs, and provided that the defendant should not be liable for the vessel's hire during the time required for repairs. The judge found that the vessel was unseaworthy when ordered by the defendant to sail on August 16, but that that was due to the fact that certain repairs were needed which were completed in a reasonable time, namely, by August 19, and that the vessel was then in a seaworthy condition and continued to be so until the expiration of the charter party. The judge also found that "the plaintiff maintained the . . . vessel in a condition fit for the service for which it was chartered during the whole time of the charter party, excepting during certain periods when necessary repairs were being made." It follows from these findings, which were warranted by the evidence, that there was no breach of its agreement by the plaintiff, or failure to perform its part of the contract, and that the defendant had no right to cancel the charter party as it attempted to do. It also follows that the defendant has no claim against the plaintiff for damages * for an alleged breach of contract by it.

The plaintiff did not warrant that the vessel should at all times be seaworthy and fit for the service she was to perform. It covenanted that she should be tight, staunch, strong and in every way fitted for the service when delivered to the defendant, and agreed that it would maintain her in a thoroughly efficient state in hull and machinery. It is not contended that she was not tight, staunch, strong and in every way fitted for the service when delivered, and the agreement to "maintain her in a thoroughly efficient state" "was well kept and fully performed, if every de-

---

* There was an amendment to the answer, called a declaration in set-off, claiming damages in recoupment.

fect and want of suitable repair were remedied as soon as by the use of due and reasonable diligence they could be discovered and proper opportunity could be had to repair the vessel and make her seaworthy." *Cook* v. *Gowan,* 15 Gray, 237, 239. *The Francis Wright,* 105 U. S. 381, 392. The defendant was compensated for any delay, if not unreasonable, to which it might be subjected, by the provision in the contract that it should not be held liable for the hire of the vessel during the time required for repairs. *The Francis Wright, supra,* p. 392. There is nothing in the contention that the chartering of the vessel by the plaintiff to other parties for the trip to Baltimore relieved the defendant from liability. It was done with the consent and approval of the defendant.

*Exceptions overruled.*

*W. B. Orcutt,* for the defendant, submitted a brief.

*F. H. Smith, Jr., (D. M. Hill* with him,) for the plaintiff.